UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| MERLINA MARROWBONE, EMMETT TRAVERSIE, HAIDEN KENYON, SAMUEL HANSON,<br><br>Plaintiffs,<br><br>vs.<br><br>KIMBERLY CRAVEN, ATTORNEY GENERAL OF THE CHEYENNE RIVER SIOUX TRIBE IN HER OFFICIAL CAPACITY; AND ARRON JULIAN, CHIEF OF POLICE OF THE CHEYENNE RIVER SIOUX TRIBE IN HIS OFFICIAL CAPACITY;<br><br>Defendants. | 3:26-CV-03020-RAL<br><br>OPINION AND ORDER DENYING MOTIONS TO DISMISS AND FOR CLASS ACTION CERTIFICATION |

Plaintiffs Merlina Marrowbone, Emmett Traversie, Haiden Kenyon, and Samuel Hanson filed a Class Action petition for a writ of habeas corpus under 25 U.S.C. § 1303 and 28 U.S.C. § 1331 challenging their banishments for life and detention by the Cheyenne River Sioux Tribe (CRST) for violating tribal banishment orders. Doc. 1. Plaintiffs seek class certification to represent 74 other banished CRST members under Federal Rule of Civil Procedure 23. Id. Defendants moved to dismiss, Doc. 15, and Plaintiffs moved for an order certifying class, waiving notice and appointing class counsel, Doc. 18. Plaintiffs later filed an amended petition dropping their claims against CRST Chairman Ryman LeBeau but restating their claims against Kimberly Craven, attorney general of the CRST, and Arron Julian, Chief of Police of the CRST. Doc. 33. This Court held a motions hearing on September 3, 2026, and allowed both sides to brief

developing issues. Docs. 51, 55, 56, 57, 58. For the reasons explained herein, Plaintiffs' motion to certify class action is denied, and Defendants' motion to dismiss is denied though the amended petition is stayed pending tribal court proceedings that may result in this case becoming moot.

## I. Factual and Procedural Background

The Plaintiffs assert two causes of action in their Amended Class Action Petition for Writ of Habeas Corpus: (1) a due process claim challenging the 2016 banishment law Tribal Resolution No. 9-2016-CR as violating the Tribal Constitution and ordinances and as precluding any tribal judicial review; and (2) a due process claim that the incarceration of the Plaintiffs and other class members for returning to the CRST's Reservation violates due process and has no remedy in tribal court. Doc. 33 at 7-9. The Plaintiffs seek release from custody and relief from banishment orders for themselves and class members. Id. at 9-10.

The CRST Tribal Council adopted Tribal Resolution No. 9-2016-CR (the 2016 Resolution) in 2016 with the purpose of combatting the harmful effects of methamphetamine use and trafficking on the reservation. Doc. 25-3. The 2016 Resolution provides that any individual convicted as an adult for "dealing, distributing, manufacturing, or trafficking Methamphetamine . . . shall be immediately excluded from the Cheyenne River Sioux Indian Reservation." Doc. 25-3 at 1. The 2016 Resolution adds that "there shall be no right of appeal or review in the Tribal Court from an Order of Exclusion issued under this Resolution." Id. at 1–2; see Doc. 25-15. The 2016 Resolution states that a person so convicted is to be escorted off the CRST Reservation and an unauthorized return to the CRST Reservation is "a Class A offense under the CRST Criminal Code." Doc. 25-3 at 2. Five years following the completion of an individual's sentence and payment of any fines, an excluded member "may petition the Tribal Council for permission to return." Doc. 25-3 at 2. Tribal Council action or inaction on such a petition does not create any

right of review of appeal in tribal court. Id. The Tribal Council has granted such petitions in the past, most recently in May of 2026. See Doc. 38-3. While banishment orders are active, excluded individuals may apply for temporary passes to return to the reservation for 24 hours. Doc. 38-4. The Tribal Council has granted some of these requests in the past. Id. Tribal Resolution No. 130-2016-CR builds on Resolution 9-2016-CR and states that upon conviction in the tribal court of returning to the reservation in violation of a banishment order, the offender will be "banished for life, with no appeal." Doc. 25-5 at 2. The 2016 Resolution requires a two-thirds vote of the CRST Tribal Council to modify or rescind. Doc. 25-3 at 2.

When they first filed their initial Class Action Petition for Writ of Habeas Corpus, Plaintiffs were incarcerated in the CRST jail for violating banishment orders. Doc. 1 at 2-3, Doc. 33 at 2-4. Plaintiffs invoked the Indian Civil Rights Act (ICRA), which states in part that "[n]o Indian tribe in exercising the powers of self-government shall . . . deprive any person of liberty . . . without due process of law." 25 U.S.C. § 1302(a)(8). ICRA also provides that the "privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." 25 U.S.C. § 1303. Plaintiffs argue the 2016 Resolution deprives them of due process for five reasons: (1) the CRST Constitution only allows non-member banishment, Doc. 29 at 14–17 (citing CRST Const. art. IV, § 1(j)); (2) the CRST lacks extra-constitutional, inherent authority to banish members, Doc. 29 at 17–21; (3) any historical banishment practice arguably supporting the CRST's power to banish members never involved incarceration as here, id. at 21; (4) the CRST Constitution's only mention of banishment (which is for non-members) requires passage of an ordinance but the Tribal Council evaded the more formal requirements of an ordinance to adopt banishment by "resolution," id. at 21–24; (5) the banishments and incarcerations themselves lack due process and there are no tribal judicial

remedies to exhaust because the 2016 Resolution says "there shall be no right of appeal or review in Tribal Court from an Order of Exclusion," id. at 24–27.

In 2018, following a conviction in federal court for Distribution of the Controlled Substance Methamphetamine, the Tribal Council issued a banishment order under the 2016 Resolution prohibiting Plaintiff Merlina Marrowbone, a member of the CRST, from entering the CRST Reservation. Doc. 25-15. In 2021, Marrowbone entered the CRST Reservation in violation of her banishment order and the CRST incarcerated her for about a month. Doc. 33 at 2-3; Doc 38-8. She later returned to the CRST Reservation, was apprehended, and received a 365-day sentence resulting in her incarceration from July 9, 2024, to July 9, 2025. After serving her year-long sentence, Marrowbone once again returned to the CRST Reservation, was arrested, and was to serve a sentence from August 26, 2025, to August 26, 2026, for violating her banishment order. Doc. 33 ¶ 6; Doc. 38-9; Doc. 38-10. On May 27, 2026, Marrowbone filed a post-conviction motion to withdraw her guilty plea to violation of the banishment order. Doc. 25-20. She also filed an affidavit seeking to disqualify the assigned tribal judge from hearing the case. See Doc. 38-10. On September 3, 2026, the same day this Court held a motion hearing in this case, a tribal judge, as discussed below, found the 2016 Resolution invalid. See Doc. 53. Marrowbone withdrew her motions in tribal court the day before her scheduled release because she determined that they were unnecessary given her imminent release. Doc. 38-10.

The three other named Plaintiffs are Emmett Traversie, Haiden Kenyon, and Samuel Hanson. Doc. 33. All three are CRST members, have prior methamphetamine-related convictions, and were subsequently banished. Doc. 38 at 8–10. Each of them was arrested and imprisoned for returning to the CRST Reservation in violation of the banishment orders with release dates set for late 2026 and early 2027. Id. The Plaintiffs' convictions for violating the banishment orders note

that the order of conviction "may be appealed" and describe the time frame for filing an appeal. Docs. 38-12 at 2, 38-14 at 2. These three Plaintiffs filed motions to dismiss in tribal court challenging the constitutionality of the 2016 Resolution. See Docs. 25-24, 25-25, 25-26. On September 3, 2026, Associate Tribal Judge Lacy Neuenfeldt of the CRST Tribal Court ordered Traversie's immediate release and set cash bonds on Kenyon's and Hanson's remaining non-banishment tribal charges. Docs. 50-2, 50-3.

In her September 3, 2026 ruling, Judge Neuenfeldt determined that the 2016 Resolution and Tribal Resolution No. 130-2016-CR were invalid. Judge Neuenfeldt issued Findings of Fact and Conclusions of Law explaining her decision in the cases for Traversie, Kenyon, and Hanson. Docs. 50-4, 50-5, 50-6. Finding of Fact 19 concluded that the tribal banishment resolutions violated Traversie, Kenyon, and Hanson's rights, and violated the Constitution and bylaws of the CRST. Docs. 50-4 at 3; 50-5 at 3; 50-6 at 3. The same Finding of Fact also concluded that the tribal court did not have subject matter jurisdiction to punish a banishment violation because it is not a criminal offense. Id. Judge Neuenfeldt's Conclusions of Law included that the CRST Tribal Council has "authority to banish tribal members by promulgating an ordinance[1] under Article IV, § 1(k) of the [CRST] Constitution," but that provision allows tribal members to appeal court decisions, whereas the resolutions deny any right to appeal. Docs. 50-4 at 4; 50-5 at 4; 50-6 at 4. Moreover, Article IV, § 1(j) of the CRST Constitution requires the Secretary of the Bureau of Indian Affairs to review any ordinance that would remove or exclude non-members. Docs. 50-4 at 5, 50-5 at 5, 50-6 at 5. Judge Neuenfeldt concluded that lifetime banishment of tribal members was cruel and unusual punishment. Docs. 50-4 at 3, 50-5 at 3, 50-6 at 3. Judge Neuenfeldt also

---

[1] A tribal ordinance and a tribal resolution are distinct, and part of the Plaintiffs' argument about the 2016 Resolution violating the CRST Constitution and due process relates to the Tribal Council bypassing the requirements necessary to adopt an ordinance to create banishment by a resolution.

ruled that the resolutions did not give fair warning as required by the CRST Criminal Code and thereby violated the rights of those subject to criminal cases for violating banishment orders. Doc. 50-4 at 5; Doc. 50-5 at 5; Doc. 50-6 at 5.

At the September 3, 2026 hearing in this case, counsel agreed that, with the four Plaintiffs receiving relief in tribal court from incarceration due to violating banishment orders, Count Two, which asserted claims on behalf of class members, could be stayed. The parties did not agree on how to treat Count One, which alleged violations of the named Plaintiffs' due process rights, or how to dispose of the pending Motion to Dismiss. Both sides asked for an opportunity to submit additional information and have now done so. Docs. 56, 57, 58. Ordinarily, the tribal court relief granted by Judge Neuenfeldt in ordering the release of the Plaintiffs from banishment sentences and declaration of banishment resolutions as invalid would render Plaintiffs' habeas claims moot. However, that is not the case here, at least yet, as the Defendants expressed an intent to appeal and the banishment resolutions could still survive.

On September 18, 2026, the CRST Tribal Council met and enacted new laws for "exclusion" of methamphetamine traffickers. Doc. 56-6. These laws are Resolution 213-2026-CR and Ordinance 88, and Resolution 2014-2026-CR and Ordinance 89, with Ordinance 88 applying to tribal members and Ordinance 89 to non-members. These new resolutions and ordinances (hereinafter collectively "the new Ordinances") differ from the prior banishment resolutions in the following ways:

1) The CRST Attorney General must petition the Tribal Court to issue an exclusion order;
2) The person subject to an exclusion petition under Section 2-2 of the new Ordinances receives notice, disclosure of evidence, a recorded hearing, the opportunity to retain counsel and to present and challenge evidence, and a decision by a tribal judge;

3) At such a hearing the CRST must satisfy the statutory grounds set forth in § 2-1 of the new Ordinances, including that the presence of the person on the CRST reservation poses a serious threat to public health, safety, or economic activity;
4) Exclusion orders are in writing and last five years, with possible renewals requiring further judicial proceedings and being limited to one year at a time, for no more than five additional years;
5) The new Ordinances permit early termination and appeals under Sections 2-4 and 2-5, as well as possible reformation of the exclusion orders under Sections 3-1 and 3-2.
6) The new Ordinances make violating an exclusion order a "class A" criminal offense under Sections 5-1;
7) A person accused of violating an exclusion order gets bail and detention hearings under Sections 5-2;
8) The new Ordinances create registration requirements for convicted drug dealers under Section 6;
9) Provisions allow petitioning for temporary, supervised return to the Reservation by persons subject to exclusion orders under Section 4.

Doc. 56-6 at 8-21; 33-54.

The Tribal Secretary transmitted the new Ordinances and adopting resolutions to the Bureau of Indian Affairs Superintendent of the Cheyenne River Agency on September 23, 2026. Doc. 56-6 at 2. The CRST is publishing the Ordinances, and under Tribal law they may become effective in late October of 2026. Doc. 56-6 at 2. According to Resolutions 213-2026-CR and 214-2026-CR, passed by the Tribal Council on September 21, 2026, the new Ordinances upon

becoming effective will supersede and replace the 2016 Resolution and prior banishment laws. Doc. 56-6 at 6, 31.

Plaintiffs maintain that this Court should proceed on their first cause of action because the CRST Constitution does not allow banishment or exclusion of CRST members. Doc. 58 at 2. Plaintiffs also filed a summary of the Tribal Council meeting apparently written on September 19, 2026, by CRST's tribal chairman announcing the adoption of the new Ordinances, which concludes with: "The Council voted not to renew the contracts of Associate Judge Lacey [Neuenfeldt] and Public Defender Kit [McCahren] as it's the end of the fiscal year so all judicial contracts are up for renewal or nonrenewal." Doc. 57-1 at 2. Judge Neuenfeldt had issued the Findings of Facts and Conclusions of Law rendering the banishment resolutions invalid, and McCahren was the attorney challenging the banishment resolutions and orders on behalf of his clients. Plaintiffs argue that there is no tribal judicial independence given that the Tribal Council fired, as plaintiffs put it, a tribal judge who did not rule as the Tribal Council wants on banishment and the public defender who challenged banishments and sentences for violating banishments for his clients. Doc. 58 at 2–4.

## II. Standard of Review on Motion to Dismiss

The Defendants move to dismiss the petition for lack of jurisdiction based on Plaintiffs' failure to exhaust tribal remedies or, alternatively, the inability of this Court to grant habeas or any other type of relief under the circumstances. Doc. 15. As a general matter, the Federal Rules of Civil Procedure apply to habeas corpus proceedings to the extent that they are not inconsistent with specific habeas corpus rules. Banister v. Davis, 590 U.S. 504, 511 (2020) (citing Fed. R. Civ. P. 81(a)(4)). This includes Rule 12 of the Federal Rules of Civil Procedure. Ebert v. Clarke, 320 F. Supp. 2d 902, 909 (D. Neb. 2004) (collecting cases); Hemsher v. United States, No. 4:19-CV-

04172, 2020 WL 4719985, at *7 (D.S.D. Feb. 10, 2020), report and recommendation adopted as modified, 2020 WL 2092896 (D.S.D. May 1, 2020); Franklin v. Dooley, 4:15-CV-04149, 2015 WL 9608750, at *1 (D.S.D. Nov. 23, 2015), report and recommendation adopted, 2016 WL 67695 (D.S.D. Jan. 5, 2016).

A Rule 12(b)(1) challenge to subject matter jurisdiction can be either facial or factual in nature. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6)). A facial challenge to federal jurisdiction limits the court; the court must view the allegations in the light most favorable to the plaintiff. See Stalley v. Cath. Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter

jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). In a factual challenge, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730 (quoting Mortensen, 549 F.2d at 891).

The Defendants' initial arguments for dismissal were facial attacks on this Court's jurisdiction because the Defendants are arguing that this Court should not exercise jurisdiction over this case due to the Plaintiffs' failure to exhaust tribal remedies. Doc. 15 at 1. Defendants also argue that this Court lacks jurisdiction to issue habeas or any other type relief to the petitioners under 25 U.S.C. § 1303. Doc. 15 at 2. See United Keetoowah Band of Cherokee Indians in Okla. v. Barteaux, 527 F. Supp. 3d 1309, 1317–18 (N.D. Okla. 2020) (determining that defendant's motion to dismiss presented a facial challenge to the court's jurisdiction because the defendant argued that the facts as alleged in the petition did not amount to "detention" within the meaning of § 1303)). Ruling on a facial attack to jurisdiction is somewhat complicated here because the rulings from Judge Neuenfeldt and the new Ordinances resulted in much being submitted by both sides which is outside of the petition or amended petition.

Relatedly, Rule 12(b)(6) permits dismissal for failure to state a claim on which relief can be granted. On a motion to dismiss under Rule 12(b)(6), "[c]ourts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must

plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal quotation marks omitted).

**III. Discussion**

Defendants moved to dismiss based on lack of jurisdiction due to Plaintiffs' failure to exhaust tribal remedies or, in the alternative, unavailability of habeas relief under 25 U.S.C. § 1303. Doc. 38 at 12. Under ICRA, the "privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." Before hearing a habeas petition under ICRA, a court must first determine (1) whether the petitioner has exhausted their trial remedies, and (2) whether the petitioner is in "detention" under § 1303. 1 Cohen's Handbook of Federal Indian Law § 11.08 (2026); see also Nygaard v. Taylor, 563 F. Supp. 3d 992, 1011–18 (D.S.D. 2021); Chegup v. Ute Indian Tribe of Uintah and Ouray Rsrv., 28 F.4th 1051, 1061–62 (10th Cir. 2022) (holding district court erred in ruling on whether an ICRA claim involved detention before dismissing for failure to exhaust); Alvarez v. Lopez, 835 F.3d 1024, 1027 (9th Cir. 2016) ("We may not exercise jurisdiction over a

habeas petition presenting ICRA claims unless the petitioner has first exhausted his tribal remedies.").

### A. Exhaustion of Tribal Court Remedies

The tribal exhaustion doctrine recognizes that tribal courts are an important part of tribal sovereignty and self-determination. Iowa Mut. Ins. v. LaPlante, 480 U.S. 9, 14–18 (1987); Nat'l Farmers Union Ins. v. Crow Tribe of Indians, 471 U.S. 845, 856 (1985); Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 33 (1st Cir. 2000) (explaining that the concern for tribal sovereignty "forms the epicenter of the tribal exhaustion doctrine"); Kerr-McGee Corp. v. Farley, 115 F.3d 1498, 1507 (10th Cir. 1997) ("The tribal exhaustion requirement created by National Farmers is based on comity concerns for Indian tribes in maintaining their remaining sovereignty."). This doctrine requires litigants, in certain circumstances, to exhaust their remedies in tribal court before coming to federal court. Iowa Mut. Ins., 480 U.S. at 16–18; DISH Network Serv. LLC v. Laducer, 725 F.3d 877, 882–83 (8th Cir. 2013). The doctrine allows tribal courts to assert authority over reservation affairs without having to "compete" against federal courts for the right to do so. Iowa Mut. Ins., 480 U.S. at 16; Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Rsrv., 27 F.3d 1294, 1299 (8th Cir. 1994).

Under these principles, petitioners filing under § 1303 must typically exhaust their remedies in tribal court before coming to federal court. Chegup, 28 F.4th at 1061; Janis v. Wilson, 521 F.2d 724, 726–27 (8th Cir. 1975). "[E]xhaustion of tribal court remedies 'means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts.'" WPX Energy Williston, LLC v. Jones, 72 F.4th 834, 837 (8th Cir. 2023) (quoting Iowa Mut. Ins., 480 U.S. at 17); see also Colombe v. Rosebud Sioux Tribe, 747 F.3d 1020, 1024 (8th Cir. 2014). Exhaustion "assist[s] in the orderly administration of justice, provid[es] federal courts with the

benefit of tribal expertise, and clarif[ies] the factual and legal issues that are under dispute and relevant for any jurisdictional evaluation." Colombe, 747 F.3d at 1024.

The CRST's Tribal Constitution establishes tribal courts, consisting of a trial court and an appellate court, "for the adjudication of claims or disputes arising among or affecting the Cheyenne River Sioux Tribe." CRST Const. art. IV, § 1(k). The CRST By-Laws provide that "[t]he tribal courts shall have jurisdiction over claims and disputes arising on the reservation." CRST By-Laws, Art. V § 1(c); Doc. 8-1 at 8, 19. Marrowbone did not seek appellate review of her conviction for violating the banishment order in the tribal court system while she was in custody and has since been released from custody. Doc. 38-11. The other named Plaintiffs—Traversie, Kenyon and Hanson—successfully obtained relief as the tribal court has either ordered their release or, for those who faced charges in addition to the banishment order violations, allowed for their release upon payment of a cash bond pending disposition of those other charges. Docs. 50-1, 50-2, 50-3.

The Plaintiffs initially argued that there were no tribal remedies available to exhaust, pointing to the 2016 Resolution's language indicating that banishment orders are not appealable. Doc. 25-3. However, at least for those like the Plaintiffs who could be subject to incarceration for violating banishment orders, they may appeal any criminal conviction for violating the banishment order and challenge the constitutionality of the banishment order in their criminal case. Traversie, Kenyon and Hanson sought and obtained relief in tribal court through an alternative avenue. A tribal judge has now declared the 2016 Resolution invalid, although the CRST said it would appeal that issue, and the Tribal Council has adopted the new Ordinances, which may supersede the 2016 Resolution and prior banishment laws once effective. Absent an amendment or supplement to the Complaint challenging these new Ordinances by a plaintiff with standing to do so who has

exhausted tribal court remedies established in the new Ordinances, this Court lacks jurisdiction to opine on the constitutionality of the exclusion rules in the new Ordinances.

Because the Plaintiffs seek a determination of whether tribal laws ordering banishment, such as Resolutions 9-2016-CR and 130-2016-CR, are constitutional under the Tribal Constitution, it is particularly important that they exhaust tribal remedies before a federal court may weigh in. "Generally, questions regarding interpretation of tribal constitutions and amendments thereto are for tribal, and not federal, courts to resolve." Colombe v. Rosebud Sioux Tribe, 835 F. Supp. 2d 736, 752 (D.S.D. 2011) (citing In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig., 340 F.3d 749, 763-64 (8th Cir. 2003). The new Ordinances provide that exclusion orders may be appealed. Doc. 56-6 at 14, 39. While Resolutions 9-2016-CR and 130-2016-CR provided that appeal of banishment orders was unavailable, other avenues existed to challenge incarceration for violation of banishment orders, which Traversie, Kenyon and Hanson successfully pursued.

The Defendants also argue that tribally-incarcerated individuals could challenge the banishment resolution by filing a habeas petition in tribal court under Rule 65 of the Tribe's Rules of Civil Procedure. That rule makes habeas relief available when a person is "unjustly imprisoned or otherwise restrained of his liberty." Doc. 25 at 2. The Defendants do not say whether someone like Plaintiffs, who have been subject to banishment and may under the new Ordinances be subject to exclusion, could file a such a habeas petition in tribal court. Further, individuals who fail to raise a constitutional challenge to the banishment resolution in their initial criminal case would face an additional hurdle if they tried to file a habeas petition doing so later. See Doc. 25-30 at 3 ("Except in cases of extraordinary injustice, habeas corpus relief shall not be available to a person incarcerated as a result of a criminal conviction where the alleged grounds for relief have been or could have been raised by an appeal following the conviction." (CRST Rule of Civil Procedure

65.2(d))). Given this standard, it is unclear whether a tribal court habeas petition represents a viable avenue to challenge banishment or exclusion.

**B. Futility of Tribal Remedies**

Exhaustion of tribal remedies may be excused where seeking tribal remedies would be futile. In the past, courts have found that the futility exception applied where there was no functioning tribal court, or where appeals go unaddressed for an unduly long period of time. Krempel v. Prairie Island Indian Cmty., 125 F.3d 621, 622 (8th Cir. 1997) (explaining that exhaustion is not required where there is no functioning tribal court); Johnson v. Gila River Indian Cmty., 174 F.3d 1032, 1036 (9th Cir. 1999) (questioning whether there was a functioning tribal appellate court when there was no response to the initial appellate proceedings in two years); see also Carter v. Buesgen, 10 F.4th 715, 716, 723 (7th Cir. 2021) (holding that four years of inaction by state court of appeals excused exhaustion requirement for a habeas petitioner).

The Plaintiffs' success in having Judge Neuenfeldt declare the banishment resolutions invalid and release them from tribal custody (or set bond hearings for those with other tribal charges) undercuts Plaintiffs' original argument that exhaustion of tribal court remedies would be futile because the 2016 Resolution forecloses the possibility of judicial remedies. Plaintiffs now argue that exhaustion of tribal remedies would be futile because the CRST lacks a functioning judicial system. Noting the recent Tribal Council summary written by the CRST's chairman about not renewing the employment of Judge Neuenfeldt and the attorney who challenged banishment penalties, the Plaintiffs argue that the Tribe lacks an impartial judicial system. Doc. 58 at 3. Plaintiffs argue that "by firing the judge who ruled against [the Tribe], and the public defender who obtained the ruling, the Tribal Council forever poisoned the well of alleged judicial independence in this case." Id. at 5.

The Tribal Council's sudden non-renewal of the jobs of the CRST tribal judge who ruled against the CRST in concluding that the banishment resolutions were invalid and of the CRST public defender who represented those challenging banishment laws calls into question whether the Tribal Council undermines the independence of the CRST's judiciary. Still, prior CRST tribal court decisions point to the tribal court's authority to check the power of the Tribal Council. In Lecompte v. Jewett, No. 85-012-A, the tribal court of appeals held that it may "review actions of the Tribal Council which are repugnant to the tribal constitution." Doc. 25-31 at 8. While that case did not involve banishment, exclusion, or a resolution that attempted to preclude review by its own terms, Lecompte affirmed the CRST tribal court's ability to review tribal laws for compliance with the tribal constitution and a plaintiff's ability to seek injunctive remedies under ICRA in tribal court. The court in Lecompte held that the appellant in that case had "an implied remedy directly under the tribal constitution to seek judicial review of the Tribal Council's actions absent a statutory remedy." Doc. 25-31 at 8. Taken together with Thompson v. CRST Board of Police Commissioners, No. 95-0006-A, Doc. 25-28, where the tribal court of appeals held that tribal sovereign immunity does not bar suits against tribal officials, Plaintiffs and those who face liberty violations sufficient to file a habeas action under ICRA should be able to bring an action challenging the constitutionality of the 2016 Resolution (if it is resurrected upon possible reversal on appeal of Judge Neuenfeldt's rulings) or the new Ordinances in tribal court, and the tribal court judges and lawyers practicing in CRST tribal court, one would hope, would be free from retribution for countermanding the Tribal Council.

Plaintiffs have argued, based on Cavanaugh v. CRST, Case No. 17R068, that exhaustion was futile, relying on a news article concerning the case, Doc. 30-2, about Cavanaugh filing an "appeal" in tribal court challenging her banishment but that the tribal court dismissed the appeal,

noting that "there is no right to appeal a banishment order." Doc. 30-2. The actual tribal court order in Cavanaugh shows that the tribal court did not hold that the banishment resolution precluded Cavanaugh from challenging the constitutionality of the resolution in tribal court. Doc. 38-7. Rather, the tribal court held that the banishment resolution was a valid and enforceable exercise of the Tribe's power of self-government:

> The Petitioner assert that the Tribal Council exceeded its constitutional powers and . . . asserts that Resolution No. 9-2016-CR unconstitutionally bans the Petitioner from the Cheyenne River Indian Reservation thereby violating her rights as an enrolled member of the [Tribe]; the Tribe asserts that the Tribal Council enacted Resolution No. 9-2016-CR as a valid exercise of its powers under the Tribal Constitution, and as a valid exercise of the Tribe's powers of self-government. The Court agrees with the Tribe, and that Resolution No. 9-2016-CR is a valid and enforceable exercise of the Tribe's powers of self-government.

Doc. 38-7 at 5. The order in Cavanaugh noted that it was a final order that could be appealed to the tribal court of appeals. Id. at 6. According to the Tribe, Cavanaugh did not appeal this order. Doc. 38 at 16. The subsequent rulings by Judge Neuenfeldt holding the banishment resolutions invalid further undermine Plaintiffs' argument that Cavanaugh somehow suggests tribal exhaustion is futile.

The CRST's court system still appears operational. Cf. Krempel, 125 F.3d at 623 (holding that a plaintiff did not need to exhaust tribal remedies where the tribe had taken only "the first steps in the development of its tribal court system"). Absent stronger indications of a nonoperational tribal judicial system, there are insufficient grounds to warrant federal court intervention at this stage.

**C. Class Action Certification Motion**

Much has changed in this case since the parties filed the presently pending motions. A tribal judge declared the banishment resolution invalid, and the CRST apparently has appealed that decision. Meanwhile, the CRST Tribal Council adopted the new Ordinances which, once in place,

could supersede and displace the banishment resolutions with what is now called "exclusion" which provides more due process protections in tribal court.

Plaintiffs continue to question tribal court independence and argue that the new Ordinances contain a tribal constitutional defect. However, none of the Plaintiffs are as yet subject to exclusion and would have tribal remedies to exhaust if they are made subject to the new Ordinances. None of the Plaintiffs are presently subject to exclusion under the new Ordinances, let alone incarcerated for violating banishment or exclusion orders. Indeed, the banishment resolutions challenged in the Amended Petition are currently invalid under Judge Neuenfeldt's ruling. Thus, certifying a class under Rule 23 led by these Plaintiffs at this time is improper.

Ultimately, Judge Neuenfeldt's declaration that the 2016 Resolution is invalid and the Tribal Council's adoption of the new Ordinances might render the Amended Class Action Petition for Writ of Habeas Corpus to be moot. But the CRST apparently is appealing Judge Neuenfeldt's rulings that the banishment resolutions are invalid. While the CRST Tribal Council put in place the new Ordinances for an exclusion program that plainly provide more process and appeal rights, this Court cannot predict what might occur in the appeal of Judge Neuenfeldt's rulings. There is also a question about what would become of the new Ordinances should the tribal court of appeals hold that the 2016 Resolution is valid. The 2016 Resolution provided that it "cannot be modified or rescinded unless by two-thirds (2/3) vote of the Cheyenne River Tribal Council." Doc. 25-3 at 2. Though the new Ordinance 88 says it supersedes the 2016 Resolution, it was not passed by two-thirds of the Tribal Council. Doc. 56-6 at 28. Ruling on the motion to dismiss has been made awkward by the information outside of the pleadings submitted by the parties. This Court thinks it best to deny the motion to dismiss this case, but invites a motion for summary judgment once more information is available about what happens in the tribal court of appeals.

## IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendants' Motion to Dismiss, Doc. 15, is denied, though this Court invites a motion for summary judgment if Judge Neuenfeldt's ruling stands or the new Ordinances in fact displace the banishment resolutions. It is further

ORDERED that this Court stays discovery in this case. It is finally

ORDERED that Plaintiffs' Motion for Order Certifying Class, Doc. 18, is denied without prejudice to refiling depending on what next occurs.

DATED this 30th day of October, 2026.

BY THE COURT:

Roberto A. Lange

ROBERTO A. LANGE
CHIEF JUDGE